IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Roberta Latrese Victoria Wharton Irby a/k/a Victoria Irby, ) ) | |
| ) | C.A. No. 8:21-2653-HMH |
| Plaintiff, ) ) | **OPINION & ORDER** |
| vs. ) ) | |
| Southern Management Corporation a/k/a Heights Finance d/b/a Quick Credit, ) ) ) ) | |
| Defendant. ) | |

This matter is before the court on the Defendant Southern Management Corporation a/k/a Heights Finance d/b/a Quick Credit's motion to compel arbitration and stay action pursuant to 9 U.S.C. §§ 2, 3, and 4 of the Federal Arbitration Act ("FAA"). For the reasons set forth below, the court grants the motion and dismisses this action.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On December 5, 2020, Roberta Latrese Victoria Wharton Irby ("Irby") entered into a Promissory Note and Security Agreement ("Contract") with the Defendant to borrow $808.33, which she agreed to repay along with a $331.67 financing charge in ten monthly payments of $114.00. (Mem. Supp. Mot. Compel Arbitration Ex. 1 (Marc Grooms ("Grooms") Decl. Ex. A (Contract)), ECF No. 9-1.) The Contract included an Arbitration Agreement through which the parties agreed that "[a]ny dispute between us . . . will be subject to arbitration." (Id. Ex. 1 (Grooms Decl. ¶ 8), ECF No. 9-1.)

On August 18, 2021, Irby filed her complaint alleging claims against the Defendant for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq., the

1

South Carolina Fair Debt Collection Practices Act ("SCFDCPA"), S.C. Code Ann. § 37-5-108 et seq., and invasion of privacy and seeking to recover statutory, actual, and punitive damages. (Compl., generally, ECF No. 1.) On September 22, 2021, the Defendant filed the instant motion to compel arbitration. (Mot. Compel Arbitration, ECF No. 9.) Irby did not file any response to the motion. This matter is ripe for consideration.

## II. DISCUSSION OF LAW

### A. Motion to Compel Arbitration

The FAA governs written contracts to arbitrate that "evidenc[e] a transaction involving commerce. . .." 9 U.S.C. § 2. Under the FAA, arbitration contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id. § 2. There is "a liberal federal policy favoring arbitration agreements." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (internal quotation marks and citation omitted). However, "[e]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997) (citations omitted).

The party "who seeks to compel arbitration under the [FAA] bears the burden of establishing the existence of a binding contract to arbitrate the dispute." Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc., 867 F.3d 449, 456 (4th Cir. 2017) (citing Adkins, 303 F.3d at 500-01). To compel arbitration under the FAA, the moving party must show:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect, or refusal . . . to arbitrate the dispute.

2

Id. at 501 (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991). Upon satisfaction of these elements, district courts retain no discretion and must "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citations omitted). In the instant case, all of these elements are satisfied: (1) there is a dispute between the parties, (2) the Arbitration Agreement is valid and covers the dispute between the parties, (3) the transaction involves interstate commerce, and (4) Irby has failed to arbitrate this dispute prior to bringing a lawsuit.

The Arbitration Agreement provides in pertinent part as follows:

**ARBITRATION AGREEMENT**

4. Arbitration. Any dispute between us, with the exception of those outlined below, will be subject to arbitration. You and I waive our rights to have disputes resolved in court by a judge or jury. Examples of such disputes include, but are not limited to, the following:

    (a) that the loan agreement is void based upon alleged unconscionability, fraud, duress, illegality, or any other grounds;
    (b) that I never entered into a loan agreement or this contract;
    (c) that you or your employees or agents have engaged in unconscionable collection practices; or
    (d) that you or your employees or agents have committed tortious acts, including but not limited to infliction of emotional distress, invasion of privacy, libel, or assault and battery.

5. Exceptions to Arbitration. Certain disputes are not subject to arbitration. We are not required to arbitrate claims of less than $1,500. If either of us files a claim of less than $1,500 in court, and another claim is added that causes the total amount claimed by you or me to exceed $1,500, then all claims must be arbitrated. If I default in payment under the loan agreement, you may repossess collateral for the loan.

6. Procedure for Arbitration. Arbitration will be initiated by filing a claim with the American Arbitration Association ("AAA"). The rules of AAA will apply unless inconsistent with this contract. You and I will pay filing fees or administrative fees based upon the consumer arbitration rules of AAA. . . . You will not be responsible for any of my attorney fees or any

        expert witness fees. Arbitration will take place in the state and county in which I signed the loan agreement. You and I will be the only parties to arbitration. If you and I can agree on a single arbitrator, we will use only one arbitrator. If you and I cannot agree on a single arbitrator, there will be three arbitrators. In that case, you and I will each select one arbitrator. The third arbitrator will be selected by the two arbitrators we have selected.

7.    Arbitration is Binding. Arbitration will be binding on both of us. Arbitration may not be appealed. Arbitration will not be subject to review by a court except:

    (a)    on the grounds set forth in 9 U.S. Code § 10; or

    (b)    on the grounds that the arbitration decision is manifestly inconsistent with the loan agreement or governing law.

8.    Applicable Law. The loan agreement involves interstate commerce. 9 U.S. Code §§ 1-16 will govern this contract, and the laws of the state in which I signed the loan agreement will determine matters of state law.

(Mem. Supp. Mot. Compel Arbitration Ex. 1 (Marc Grooms ("Grooms") Decl. Ex. A (Arbitration Agreement)), ECF No. 9-1.)

"Whether an agreement to arbitrate was formed is a question of 'ordinary state-law principles. . . .'" Rowland v. Sandy Morris Fin. & Estate Plan. Servs., LLC, 993 F.3d 253, 257 (4th Cir. 2021) (quoting Hill v. Peoplesoft USA, Inc., 712 F.3d 540, 543 (4th Cir. 2005)). "Under South Carolina law, a contract is formed between two parties when there is, inter alia, 'a mutual manifestation of assent to [its] terms.'" Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 236 (4th Cir. 2019) (quoting Edens v. Laurel Hill, Inc., 247 S.E.2d 434, 436 (S.C. 1978); see also Stevens & Wilkinson of S.C. v. City of Columbia, 762 S.E.2d 696, 701 (S.C. 2014) ("A valid and enforceable contract requires a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement.") (emphasis in original) (citation omitted). "The necessary elements of a contract are an offer, acceptance, and valuable

4

consideration." Sauner v. Pub. Serv. Auth. of S.C., 581 S.E.2d 161, 165-66 (S.C. 2003).  The Arbitration Agreement is in writing, incorporated into the Contract, and signed by Irby and a representative of the Defendant.  (Mem. Supp. Mot. Compel Arbitration Ex. 1 (Marc Grooms ("Grooms") Decl. Ex. A (Arbitration Agreement)), ECF No. 9-1.)  There is no evidence to support a finding that the Arbitration Agreement is not a valid agreement to arbitrate.

Further, the Arbitration Agreement plainly covers the parties' dispute.  Irby alleges claims against the Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., the South Carolina Fair Debt Collection Practices Act, S.C. Code Ann. § 37-5-108 et seq., and invasion of privacy.  (Compl., generally, ECF No. 1.)  Paragraph 4 of the Arbitration Agreement plainly encompasses these claims.  (Mem. Supp. Mot. Compel Arbitration Ex. 1 (Marc Grooms ("Grooms") Decl. Ex. A (Arbitration Agreement)), ECF No. 9-1.)  The Arbitration Agreement covers claims "that [the Defendant's] employees or agents have engaged in unconscionable collection practices; or . . . that [the Defendant's] employees or agents have committed tortious acts, including but not limited to infliction of emotional distress, invasion of privacy, libel, or assault and battery."  (Id. Ex. 1 (Grooms Decl. Ex. A (Arbitration Agreement)), ECF No. 9-1.)

In addition, it is undisputed that the Arbitration Agreement affects interstate commerce.  The FAA governs all arbitration agreements contained in contracts that "involve" or "affect" interstate commerce.  Allied–Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 272-75 (1995).  The term "involving commerce" is the "functional equivalent" of "affecting commerce," which "normally signals Congress' intent to exercise its commerce powers to the full."  Id. at 273-74.

In Allied-Bruce, the Supreme Court adopted the "commerce in fact" test, which requires that the transaction "in fact 'involv[e]' interstate commerce." Id. at 281.

In the present case, the Arbitration Agreement provides that it is governed by the FAA, noting that "9 U.S.C. §§ 1-16 will govern this contract." (Id. Ex. 1 (Grooms Decl. Ex. A (Arbitration Agreement)), ECF No. 9-1.) Further, the Arbitration Agreement provides that the Contract "involves interstate commerce." (Id. Ex. 1 (Grooms Decl. Ex. A (Arbitration Agreement)), ECF No. 9-1.) Thus, Irby and the Defendant agree that the Contract affects interstate commerce. Further, the Defendant submits that in providing consumer loans to borrowers it utilizes the internet, texting, telephones, and the United States mail. (Mem. Supp. Mot. Compel Arbitration Ex. 1 (Grooms Decl. ¶ 5), ECF No. 9-1.) Further, the Defendant communicates with consumer reporting agencies. (Id. Ex. 1 (Grooms Decl. ¶ 5), ECF No. 9-1.) The Defendant's assertions are undisputed. Based on the foregoing, the Contract at issue involves interstate commerce.

Lastly, it is undisputed that Irby has failed to arbitrate this dispute prior to initiating this lawsuit. Based on the foregoing, the Arbitration Agreement is a valid and binding agreement to arbitrate. Therefore, the court grants the Defendant's motion to compel arbitration and dismisses this matter. See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").

It is therefore

**ORDERED** that the Defendant's motion to compel arbitration, docket number 9, is granted, and this case is dismissed.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.<br>Senior United States District Judge

Greenville, South Carolina
October 8, 2021